Bernard C. MORGAN et al., Appellants,

v.

STATE of Texas, Appellee.

No. 5433.

Court of Civil Appeals of Texas.

El Paso.

Feb. 15, 1961.

Rehearing Denied March 15, 1961.

Andress, Lipscomb, Peticolas & Fisk, El Paso, for appellants.

Will Wilson, Atty. Gen., Joe G. Rollins, H. Grady Chandler, L. P. Lollar, Edward A. Cazares, Asst. Attys. Gen., for appellee.

FRASER, Justice.

The State of Texas, as plaintiff, condemned 295,773 square feet of industrial property owned by J. Francis Morgan, Bernard C. Morgan, Leo P. Morgan and W. D. Morgan, defendants. The Special Commissioners appointed by the court awarded $236,618, or 80¢ per square foot for the land. The State appealed, and the jury fixed the value at 60¢ per square foot, or $177,463.80. Defendants having previously withdrawn the $236,618 as authorized by statute, judgment was entered in favor of the State of Texas against the defendants for $59,154.20. Appeal has been perfected to this court.

The parcel of land taken by condemnation consisted of 6.79 acres which was a part of a 21.033-acre tract owned by defendants.

Appellants' first point claims error in the court's refusal to permit witnesses to testify on direct examination as to sales of land of smaller dimensions than one acre. Defendants presented witnesses to testify about the sale of a 6000-square-foot tract, and of an 8799 square foot tract. These tracts were a part of the tract owned by the defendants, and sold for $1 per square foot. The court indicated and fixed the size of comparable sales at one acre (43,560 square feet), and excluded evidence of sales of any smaller size. There were sales other than the two mentioned, which were excluded.

These matters of the value of land severed by condemnation have always presented much difficulty. It is not a voluntary sale on the part of the condemnee, and, in many cases, a taking which he bitterly resents. In arriving at the market value of the land taken, it seems always the case that there are many witnesses and appraisers, and the jury is obliged to consider a great mass of testimony with wide variation in opinions of value. Because of these highly divergent opinions as to the value of the land taken, it is necessary for the trial judge to exercise considerable discretion, and we have not seen any case where it has been possible to enunciate a general rule that would be useful and acceptable in the majority of cases. Each case has presented peculiar and particular difficulties. It is for these reasons that appellate courts have been obliged to consider carefully the discretion exercised by the trial judge in his rulings. In many cases of this type, there is a

tendency to speculate and to offer evidence that is largely conjectural or speculative in effect. The very nature of this type of case, with each set of facts being different and the opinions being so widely divergent, places a very difficult and severe burden on the trial judge, because of the fact that often he has no useable precedent to follow. Here the trial judge set, as a standard, comparable sales of one acre or more in extent, ruling out sales of smaller tracts. It is difficult to assess the propriety of this ruling, because two of the tracts were sold from the same section of land from which the severed land was taken; but it must be admitted that these smaller tracts fronted on the street and were, of course, much shallower in depth. Of course there might well be a different value for a very small tract than that of an acre or more, as many considerations enter into the seller's position in selling off small tracts. Because this matter is submitted to a jury of laymen, the trial judge has to lay down some rule, and we are reluctant to say, here, that his action was an abuse of his discretion. He was the trial judge, and he had to operate by some sort of standard. This is obviously the course he considered best calculated to produce the greatest amount of proper evidence. Because juries have so much latitude, and because there has been such a divergence in opinion testimony, the courts have even enlarged the law and rules regulating remittitur to the extent that now the appellate court is expected to require a remittitur in the amount it thinks proper if, in its opinion, the award is too high. This, in effect, makes an appellate court a fact-finding or trial court—somewhat of an innovation in the law as we know it.

■■■ As we understand the law, the decisions and rulings of the trial court must be upheld unless there is clear evidence that the trial court abused its discretion. Taking all facts into consideration, we do not believe that such is the case here. There was considerable testimony that the tract involved was best suited for light industry and warehouses. The tract

severed was 6.79 acres, out of a tract of more than 21 acres. All things considered, therefore, we do not believe that the judge abused his discretion in ruling out evidence on sale of tracts smaller than one acre in area. McCarthy v. City of Amarillo, Tex. Civ.App., 307 S.W.2d 595; State v. Carpenter, 126 Tex. 604, 89 S.W.2d 194; Johnson v. City of Richardson, Tex.Civ.App., 206 S.W.2d 98. As to cases touching on comparable sales: Dennis v. Dallas, C. & S. W. Ry. Co., Tex.Civ.App., 94 S.W. 1092; Dickey's Estate et al. v. Houston Indep. School Dist., Tex.Civ.App., 300 S. W. 250; Minyard v. Texas Power & Light Co., Tex.Civ.App., 271 S.W.2d 957. For these reasons, this point is therefore overruled.

■■ Appellants' second and third points allege error in the trial court's refusal to permit them to cross-examine the State's witnesses with reference to tracts smaller than one acre. We have examined this problem, and we do not believe there is error presented. It has long been decided, of course, that you cannot do indirectly what you cannot do directly; and, here, defendants endeavored to test the witness' qualifications, in part, by eliciting from him the evidence that had been excluded on direct examination. We do not believe the record shows that the trial court's rulings here handicapped defendants from testing and exploring the qualifications of the witnesses. A reading of the record discloses that the matters were alluded to in some of the cross-examination. We believe that the record shows that defendants were allowed enough scope to determine and exhibit the qualifications of the witnesses without cross-examination as to whether they knew about the excluded sales and the terms of such. Again, in matters like this, both the textbooks and the cases point up the burden placed on the trial judge, and the necessary discretion awarded him, in order that he can meet his trial responsibilities. We cite: Wigmore on Evidence, section 1808; Texas Law of Evidence, Second Edition, McCormick & Ray,

section 592; City of Dallas v. Malloy, Tex. Civ.App., 214 S.W.2d 154 (err. dism.); Hanks v. Gulf, C. & S. F. Ry. Co., 195 Tex. 311, 320 S.W.2d 333; American Guaranty Life, Health & Acc. Ins. Co. v. State, Tex. Civ.App., 332 S.W.2d 135; United States Fid. & Guar. Co. v. Jordan, Tex.Civ.App., 278 S.W.2d 569 (err. dism.). Because of the above matters, and because the record does not show that defendants were substantially harmed by the exclusion of this cross-examination, we therefore overrule appellants' second and third points.

■■ Appellants' fourth, fifth and sixth points refer to the refusal of the court to admit in evidence or to permit cross-examination regarding a sale of 50,000 square feet just below the land being condemned, sold by several members of the Morgan family. Here, again, we think the court was correct in excluding evidence of this transaction, as part of the consideration—if not most of it—was 234.19 acres of land in New Mexico. We do not believe this is a proper method of arriving at market value of condemned land, even though evidence might be tendered as to the value of the land offered in trade. We believe that the proper rule is to determine what the severed land would have brought in money. It was also mentioned that, in addition to trading the 50,000 square feet for the 234.19 acres of New Mexico land, the defendants were to build a warehouse on the 50,000 square-foot tract. We do not believe this trade was proper evidence of the market value of the property condemned. City of Houston v. Charpiot, Tex. Civ.App., 292 S.W.2d 677 (n. r. e.), and cases cited. It will be noted, of course, that to have permitted the above type of testimony would have required appraisal and valuation of the property received in trade, plus the expense of building the warehouse. We think, therefore, that the trial judge was within his discretion in excluding this type of evidence in this case. There was other evidence, and this was not the only available information. These points are accordingly overruled.

■ Appellants' seventh point refers to the court's refusal to include in his charge the following language: "taking into consideration all of the uses to which it is reasonably adaptable and for which it either is or in all probability will become available within the reasonable future." The definition given by the court is the one approved in the Carpenter case (supra), and we believe it is adequate for the case before us. The excluded portion appears to have been taken from the case of City of Austin v. Cannizzo, 153 Tex. 324, 267 S.W. 2d 808; but in that case there was a zoning problem which the condemnees hoped to remedy. Such is not the case here, and we believe that the definition as given by the court was reasonably adequate to meet the situation. In all frankness, on the basis of the record as we have read it, we do not see any great harm in the proposed statement, and it is doubtful if the inclusion of it would have been wrong; but we do not feel its exclusion was harmful on the basis of the case before us. The statement is carefully worded and would not, we think, have been harmful if submitted; but it is tailored to meet the situation in the Cannizzo case, supra, rather than a settled situation such as we have in this case. This point is therefore overruled.

■ Appellants' eighth point complains of jury misconduct, alleging that the jury reached its verdict by the quotient method. The record shows that the jurors did submit suggested figures; but jurors Fields, Macias, Cortez, Flores and Preston all testified that they would not have agreed to the quotient figure had they not felt it was proper and right. Juror Preston, juror Flores and juror Cortez said, flatly, that they did not agree to be bound by the quotient average. Two elements are necessary to constitute error of this nature, and one is that the jurors agree in advance that they will be bound by the average, or quotient, such agreement being made before they know what the figure will be. That is obviously not the case here, and we do not believe the record reflects that this is

a quotient verdict of the type that the law forbids, but rather a vote by the jurors to reach a figure upon which all could agree. Maryland Casualty Co. v. Gideon, Tex. Civ.App., 213 S.W.2d 848. Further, here again is an example of the discretion vested in the trial judge. The judge here heard all of the testimony, concluded that misconduct was not present, and overruled the motion. Naturally, he has considerable latitude, as this is a question of fact to be determined by the trial court. These matters are fully discussed in the following cases: City of Cleburne v. Heath, Tex.Civ.App., 304 S.W.2d 417; Noyl Corp. et al. v. Houston Indep. School Dist., Tex.Civ.App., 317 S.W.2d 756. The latter case discusses this matter fully and contains many authorities on the point. There are many other cases; but, in the final analysis, the appellate court is bound by the decision of the trial judge unless it clearly appears that he has abused his discretion, and such, we believe, is not the case here. Appellants' eighth point is overruled.

■ Appellants' ninth point complains of jury misconduct as to a statement by one of the jurors that the property got muddy when it rained. There was evidence that this area was unpaved. Any reasonable juror would likely know that it would get muddy if it rained. In any event, the testimony from the jurors regarding this statement is in controversy and not in accord. When such is the case, it behooves the trial court to decide whether misconduct did or did not occur. The trial court found that there was no misconduct, and we believe that he was correct in his finding. Red Ball Motor Freight Inc. v. Cordova, Tex.Civ.App., 332 S.W.2d 753; State By and Through City Council of Daingerfield v. Walker, Tex.Civ.App., 334 S.W.2d 611; City of Dallas v. Hutchins, Tex.Civ.App., 226 S.W.2d 155 (n. r. e.) In considering the above point, it must always be borne in mind that the trial court, in passing on such matters, is bound by the rule that the misconduct, if any, proba-

bly resulted in injury to the aggrieved party and resulted in an improper verdict. The trial judge did not so find. We believe his finding was justified; therefore, appellants' ninth point is overruled.

For the reasons set forth above, all of appellants' points are overruled and the decision of the trial court is affirmed.