# ARKANSAS OKLAHOMA GAS CORPORATION
## *v.* Keith BURTON and Margaret BURTON

CA 83-115                                       664 S.W.2d 894

Court of Appeals of Arkansas
Division II
Opinion delivered February 29, 1984

*Daily, West Core, Coffman & Canfield,* by: *Michael C. Carter* and *Wyman R. Wade, Jr.,* for appellant.

*Pearson, Woodruff & Evans,* by: *Marsha C. Woodruff,* for appellee.

JAMES R. COOPER, Judge. This is an eminent domain case. The appellees, Mr. and Mrs. Keith Burton, were

awarded $3,500.00 as just compensation for a right-of-way easement taken from them by the appellant for a gas pipeline. The appellant brings this appeal claiming that there was not sufficient competent evidence before the jury to support its verdict of $3,500.00, that the trial judge erred in not striking the testimony of Keith Burton concerning the after value of his remaining lands and finally that the trial judge erred in permitting the jury to hear and consider testimony from Keith Burton concerning damage to his well. We reverse and remand for a new trial.

Arkansas Oklahoma Gas Corporation took .53 of an acre of the appellees' lands for a gas pipeline from the appellees' 19.21 acre farm. At trial, only Keith Burton testified for the appellees/landowners as to the value of the land being taken. Mr. Burton stated that the before value of his land was $61,500.00 based on the price he purchased it for approximately a month before the pipeline was constructed. Mr. Burton then stated that the after value of the property was $54,000.00, for a difference of $7,500.00 damages resulting from the taking. As a basis for his testimony, Mr. Burton stated he had viewed 35-40 pieces of property prior to purchasing the farm he now owned. He also stated he and his wife had bought and sold ten to twelve houses and had experience in real estate purchases in California and Iowa. He also testified that he had been involved in an eminent domain case on a farm he owned in Iowa. This testimony is perhaps as confusing to us as it was to the trial judge, who commented that maybe Mr. Burton should not have tried to qualify himself as an expert and should have testified simply as an owner. In any event, Mr. Burton went on to state, on cross-examination, that he believed that the property was worth $1,500.00 per acre, that he did not have an identifiable method which he used for estimating the after value he had testified to, but that he just felt $7,500.00 was just compensation for "the land, the road, the trees, the shrubs, and everything that was damaged. My estimate, that is what I feel the damage is."

The appellant produced one expert witness on damages, John Libby. Mr. Libby testified that he considered comparable sales in the area and was of the opinion that the

land taken had a value of approximately $1,000.00 per acre. Mr. Libby went on to state that in his opinion, just compensation for the .53 of an acre taken plus the additional .18 of an acre temporary construction easement was $1,000.00.

The law is well settled in Arkansas that a landowner may testify to the value of his property because of his status as an owner, and the weight of the landowner's testimony is affected by his knowledge of values. *Southwestern Bell Tel. Co.* v. *Fulmer,* 269 Ark. 727, 600 S.W.2d 450 (Ark. App. 1980); *Arkansas Highway Commission* v. *Darr,* 246 Ark. 204, 437 S.W.2d 463 (1969). While we have no trouble with Mr. Burton's basis for his estimate as to the value of the tract before the taking, his testimony as to the value after the taking appears to us to have had no real basis. Perhaps the most revealing comment by Mr. Burton was his statement in response to the question by counsel for the appellant, who was persistently attempting to determine the basis for Mr. Burton's $7,500.00 figure;

> Counsel: All right, so you added all of them up [trees, shrubbery, the roads, the land, the well] and you came up with a figure of $7,500.00, is that right?
>
> Mr. Burton: First, we put down I thought it was about $12,000.00, but then we reconsidered and talked to my attorneys, not being an expert on trees and stuff like that. I thought $7,500.00.

It is quite apparent that Mr. Burton's after value figure was totally arbitrary and without factual basis and should have been stricken. It becomes obvious that after stating that the price per acre of his land was $1,500.00, admitting that the taking was less than 1 acre, and then attempting to fix a value on this taking at $7,500.00, that the witness was merely speculating upon the after value of the entire tract.

The appellees were entitled to recover the full fair market value of the land taken for the easement, plus the damage, if any, to the remainder of the tract, *Arkla Gas Co.* v. *Howell,* 244 Ark. 86, 423 S.W.2d 867 (1968), rather than the

difference in value of the entire tract before and after the taking.

The appellee also argues that the trial court should have stricken the testimony of Mr. Burton concerning damages to his well caused by the placement of the pipeline. Mr. Burton testified that the ditch was approximately 18 feet from his well, and that shortly after it was dug, his water became muddy, his water system lost pressure, and he had to clean mud out of his water tank in order to get the water pressure back. Counsel for the appellant objected to this testimony on the grounds that Mr. Burton did not establish a connection between the laying of the pipeline and the well becoming muddy as required by the Arkansas Supreme Court in *Continental Geophysical Co. v. Adair*, 243 Ark. 589, 420 S.W.2d 836 (1967). In *Continental*, the appellant drilled ten holes to a depth of 100 feet and set dynamite charges in them for the purpose of seismic exploration. The appellees owned water wells ranging from 1,600 feet to 6,300 feet from the appellant's test holes. The appellees claimed the blasting caused their wells to go dry. There was also a severe drouth in progress at the time of the blasting. The Court found that the proof was insufficient to show a causal relationship between the detonation of the test holes and the failure of appellees' wells. The Court remanded the case, finding that there was no affirmative showing that the blasting could not have caused the wells in question to go dry. We feel that this case is similar. Although Mr. Burton's testimony is insufficient to establish the required nexus between the appellant's activities and the problems he stated he experienced with the well, neither did the appellant show that it could not have been the cause of the problems. Therefore on remand, we believe that the appellees should have the opportunity to demonstrate through competent evidence that the appellant's digging caused their well to become muddy and lose its pressure.

Reversed and remanded.

MAYFIELD, C.J., and CRACRAFT, J., agree.